UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

XAVIER MCLAUGHLIN,

                Petitioner,

v.

PAUL M. RENICO,

                Respondent.

_____/

Case No. 04-CV-74268-DT

HONORABLE BERNARD A. FRIEDMAN
UNITED STATES CHIEF DISTRICT JUDGE

MAGISTRATE JUDGE  STEVEN D. PEPE

REPORT AND RECOMMENDATION
ON
XAVIER MCLAUGHLIN  PETITION FOR WRIT OF HABEAS CORPUS (DKT.# 3)

Petitioner Xavier McLaughlin has filed a habeas petition under 28 U.S.C. §2254 challenging his three count conviction by a jury in the Macomb County Circuit Court for first-degree criminal sexual conduct and his sentence to 9-25 years.  This matter has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).  For reasons noted below, it is recommended this Petition be DENIED.

I. BACKGROUND

After the 2001 conviction, Petitioner filed his claim of appeal in the Michigan Court of Appeals.  On September 25, 2003, the Michigan Court of Appeals, in a 38 page opinion (in the Michigan Appellate Reporter Service), affirmed Petitioner's convictions.  *People v. McLaughlin*, 258 Mich. App. 635, 672 N.W.2d 860 (2003).  Petitioner's application for leave to appeal in the Michigan Supreme Court, was denied on April 15, 2004, for lack of merit.  *People v. McLaughlin*, Michigan Supreme Court No. 125036.

Petitioner's habeas petition challenges his conviction on the same grounds raised in state court and he attaches his extensive appellate court brief in partial support.  His issues are:

A.  The Prosecutor Committed Misconduct Warranting Reversal and a New Trial.

B.  The Trial Court Reversibly Erred in Denying the Defense Motion to Dismiss on Speedy Trial Grounds.

C.  The Trial Court Reversibly Erred in Admitting Certain Inadmissible Evidence and in Keeping out Certain Admissible Evidence.

D.  The Trial Court Reversibly Erred in Overruling the Defense Objection to the Intoxication-is-Not-A-Defense Jury Instruction Requested by the Prosecutor.

E.  The Trial Court Violated the United States and Michigan Constitutions in Sentencing the Defendant to Concurrent Prison Terms of 108 Months (9 Years) to 300 Months (25 Years) on the Three CSC 1 Convictions.

F.  The Sentencing Court Reversibly Erred in Failing at Sentencing to Provide the Advice-of-Rights Required by MCL 769.34 (7).

G.  The Trial Court Reversibly Erred in Scoring 50 Points On November 11.


## II.  THE FACTS LEADING TO THE CONVICTION.

The Michigan Court of Appeals set forth the facts underlying Petitioner's conviction as follows in a manner that, except as noted below, parallels those in Petitioner's state appellate brief:

> The victim met defendant in December 1999 or January 2000, when defendant was working with the victim's daughter. The victim and defendant developed an amorous relationship, and moved in together soon after they met. The victim, her daughter, and defendant lived together in an apartment in Warren.
>
> Approximately one month after defendant and the victim began dating, defendant told the victim that he used crack cocaine and that he was spending most of his paychecks on crack cocaine. Nonetheless, defendant and the victim sought counseling regarding their relationship and his drug problem from their pastor, Reverend James Moore, and his wife, Missionary Edythe Moore. At trial, defendant denied ever using crack cocaine.
>
> On May 9, 2000, the victim fractured her spine and was hospitalized for three weeks following corrective surgery. The victim and her daughter both testified that defendant sold or pawned their possessions to buy drugs while the victim was in the hospital. The victim contended that she ended her relationship with defendant in May 2000, because he failed to resolve his drug addiction; however, defendant claimed the relationship continued.
>
> Soon after leaving the hospital, the victim rented an efficiency unit in a motel in Warren for herself and her daughter. The victim remained partially immobile from the surgery and used a hospital bed to lie with her knees elevated. The victim testified that she was in too much pain to have any interest in sex during this time.

2

On August 2, 2000, the victim stopped taking her prescription pain medication and began to experience serious withdrawal symptoms. The victim asked her daughter to call defendant for help, and she and defendant took the victim to an emergency room. The victim spent three weeks in an inpatient drug detoxification and treatment program.

The victim was released from drug treatment around August 22, 2000. On August 27 or 28, defendant called the victim and asked if he could move in with her because he had lost his job. The victim agreed that he could stay for a week, though she had no interest in rekindling the relationship. The victim went to defendant's apartment to pick up defendant and help move his clothes to the motel. Defendant stayed with the victim for the next three nights, sleeping in the motel room bed while the victim slept in the hospital bed. The victim's daughter spent nights with a friend, but returned to the motel during the day. The victim continued to be in pain and remained partially immobile.

On August 29, 2000, defendant asked to borrow the victim's car so he could take a vinyl siding job and earn money for rent. The victim and her daughter permitted defendant's use of the car because they needed the money for rent and groceries. Defendant said he would return at 10:00 p.m., but did not return that day and the victim was unable to reach him. Defendant denied telling the victim that he would return the car that night.

Defendant returned on August 30, 2000, around 2:30 p.m. without money or groceries, smelling of alcohol. Defendant said he "messed up" or "f---ed up," which the victim and her daughter understood to mean that he had been drinking and using crack cocaine. The victim asked defendant if he had spent all his earnings on crack cocaine and alcohol; defendant admitted that he had. The victim yelled at defendant and told him to leave. Defendant became belligerent, said that he was tired of "trying to put up with [the victim's] perfect ways," squirted water in the victim's eyes, pushed her back onto the bed, and yelled at her to listen to him. Defendant threw the victim's glasses off the bed and refused to get them for her. The victim told defendant to leave, but he refused to do so. Eventually defendant and the victim calmed down, and defendant said that he really wanted to get help for his drug problem. The victim told defendant he could stay a few more days.

While they were talking, a friend of the victim's daughter came to the room and asked the victim's daughter to take her on an errand. After the victim told her daughter that she was all right, the victim's daughter left with her friend. According to the victim, after her daughter left, defendant went to the kitchenette area and picked up a butcher knife. Defendant told the victim to undress and threatened to cut off her clothes if she refused. The victim refused, and defendant told her to "do it or else." The victim continued to refuse, but complied when defendant put the knife to her throat. Defendant then pushed the victim onto the bed on her back, grabbed her ankles, pulled her legs apart, and said, "Bitch, you've asked for this for a long time." Defendant bit the victim's breasts. The victim tried to resist and told defendant he was hurting her.

Defendant sexually penetrated the victim while she was on her back. Defendant then grabbed the victim's wrist, flipped her onto her stomach, and attempted to penetrate her anally, but was unable to completely do so. Defendant then penetrated

3

the victim vaginally a second time to the point of ejaculation. Afterwards, the victim was shaking so hard that she could not stand. Defendant dragged the victim by her hair into the shower and washed the semen off her. The victim tried to leave the shower, but defendant held her in a chokehold and pushed her back in. While defendant was washing his hair, the victim was able to escape from the shower.

The victim's daughter returned at this point, and the victim asked her to make defendant leave. Defendant came out of the bathroom, dressed, and walked out. Defendant returned a few minutes later and banged on the window, but the victim's daughter locked the door and did not allow him to enter. The victim called the police and reported that her ex-boyfriend had raped her at knifepoint. [FN1]  The police arrived while defendant was still banging on the door and arrested him.

_____

FN1./  Defendant admitted that he had sexual relations with the victim after her daughter left, but claimed that she consented. Defendant denied picking up a knife or threatening the victim. Defendant accused the victim of always acting "crazy" after sex, and asked her, "if you want me to leave you alone, do you want me to leave you alone now forever or just for right now?" The victim replied, "forever," and defendant walked out of the room in his pajama pants.

*People v. McLaughlin*, 258 Mich. App. at 639-44.

While the Michigan Court of Appeals indicates in their fact section that Petitioner threw the victim's glasses off the bed, he states that he removed his accuser's glasses from her face and placed them on the night stand next to her.  He then preceded to grab her by her face and kiss her.  Petitioner acknowledges that his accuser was upset with him.  But Petitioner disputes that the sexual act with her was not consensual.  He indicates that he approached her as he normally would, by rubbing her vagina and requesting that she have sex with him.  Petitioner states that she responded yes, and only then did they have sex.  Upon the completion of sex, Petitioner acknowledges that his accuser appeared disturbed.  Yet, he attributes this behavior to her normal behavior, and stated "she acted crazy every time they finish making love" (Dkt. #3-1, p. 27).  Similarly, Petitioner indicated that it was their normal routine to shower after they had sex.  He states that after he completed showering he came out of the bedroom and saw his accuser sitting on the bed dressing.  He claims that they did not get into "another" argument.

4

**III.    LEGAL STANDARD FOR HABEAS REVIEW OF STATE CONVICTIONS:**

### A.  Standard of Review Under the  Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") [1]

To be entitled to habeas relief, a petitioner must show that his conviction and/or sentence were imposed in violation of the federal constitution or other federal law.  In addition, a petitioner must establish actual prejudice from the error.  *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).  Federal courts must give complete deference to a state court's findings supported by the evidence.  *Sumner v. Mata*, 455 U.S. 591, 597 (1982).  Petitioner may rebut the presumption of correctness only with clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); *Smith v. Jago*, 888 F.2d 399, 407 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Further, trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas petition unless the error renders the trial so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment.  *Estelle v. McGuire*, 502 U.S. 62 (1991); *Waters v. Kassulke*, 916 F.2d 329, 335 (6th Cir. 1990); *Matlock v. Rose*, 731 F.2d 1236, 1242 (6th Cir. 1984), *cert. denied*, 470 U.S. 1050 (1985).  Even a trial court's abuse of discretion, without more, does not show a violation of the federal constitution and therefore does not warrant habeas relief.  *Sinistaj v. Burt*, 66 F.3d 804, 805 (6th Cir. 1995).

AEDPA modified 28 U.S.C. §2254(d) to require that where a claim has been adjudicated on the merits in state court proceedings, federal habeas relief shall not be granted unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[1] The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),  Pub.L. No. 104- 132, 110 Stat. 1214 (1996).

5

The Supreme Court has explained how §2254(d)(1) is to be applied: "A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Id.* at 405-06.

A federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable...
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law .... Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11 (emphasis in original).

**B.    Procedural Bar - Exhaustion of State Court Remedies.**

Before a state prisoner may challenge the constitutionality of his state court conviction by seeking habeas corpus relief pursuant to 28 U.S.C. §2254, the state prisoner must first exhaust available state court remedies by presenting his claims to the state courts, to provide them with an opportunity to remedy any constitutional infirmities in his conviction. 28 U.S.C. §2254(b) and (c); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). A prisoner confined pursuant to a Michigan conviction must raise each habeas issue in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal review of the conviction. *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Dombkowski v. Johnson*, 488 F.2d 68, 70 (6th Cir. 1978).

6

Unless an exception applies, a petition must be dismissed for lack of exhaustion if it contains at least one issue which was not presented to the state courts, so long as a remedy is still available for the petitioner to pursue in the state courts. *Rose v. Lundy*, 455 U.S. 509, 518-20 (1982); *Rockwell v. Yukins*, 217 F.3d 421, 424(6th Cir. 2000) (the AEDPA maintains the *Rose* requirement that a mixed petition must be dismissed).

On the other hand, the Supreme Court stated that it would be in the interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not even raise a colorable federal claim. *See Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where petition was plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend federal-state comity).

This exception is contained in AEDPA, 28 U.S.C.A. § 2254(B)(2), which states that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

## IV. ANALYSIS OF PETITIONER'S CLAIMS

### A. The Prosecutor Committed Misconduct Warranting Reversal and a New Trial.

In order to be a federal constitutional due process violation warranting habeas relief, the prosecutorial misconduct must be so egregious as to deny petitioner a fundamentally fair trial. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *Hamblin v. Mitchell*, 354 F.3d 482, 494 (6th Cir. 2003), *cert. denied*, 125 S. Ct. 344 (2004); *Frazier v. Huffman*, 343 F.3d 780, 791 (6th Cir.), *as amended on reh'g*, 348 F.3d 174 (2003), *cert. denied*, 541 U.S. 1095 (2004); *Hutchison v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002); *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982) (en banc). In this regard, "'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Serra v. Mich. Dep't of Corr.,* 4 F.3d 1348, 1355 (6th Cir. 1993) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)); *accord Smith v.*

7

*Mitchell*, 348 F.3d 177, 210 (6th Cir. 2003), *cert. denied*, 125 S. Ct. 278 (2004); *Darden v. Wainwright*, 477 U.S. 168 (1986)(the prosecutor's statements must have been so egregious as to render the entire trial fundamentally unfair.)

Specifically, the Sixth Circuit takes into account "'the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.'" *Hamblin*, 354 F.3d at 494-95 (quoting *Angel*, 682 F.2d at 608); *accord Frazier*, 343 F.3d at 791; *Hutchison*, 303 F.3d at 750; *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000). "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004), *cert. denied*, 125 S. Ct. 1645 (2005). Even before AEDPA, the Supreme Court concluded that review of state court convictions in federal courts on habeas corpus is narrowly based on the constitutional guarantee of due process and not the broad exercise of supervisory power by the federal appeals court with regard to its own trial court. *DeChristoforo*, 416 U.S. at 642. Again, after AEDPA, the inquiry in federal habeas review is directed to deciding whether the state court's determination of the issue was an unreasonable application of clearly established federal law. *Frazier v. Huffman*, 343 F.3d at 793.

The Michigan Court of Appeals considered Petitioner's claim with regard to the prosecutor's alleged prejudicial comments. Because in many instances objections were not made at trial the court, the Michigan court reviewed the remarks only for plain error. Finding none, it declined to provide relief. With regard to the statements where objections were made, the Michigan court found that they did not deprive Petitioner of his right to a fair trial.

Because the victim was the mother of two children, defense counsel objected to the Prosecutor's asking Shelley Geiman, a registered nurse who worked for the Sexual Assault Nurse Examiners (SANE) who attended the victim at the hospital, about the severity of injury to the hymeneal area if the victim were a virgin. Defense counsel objection was interrupted by a

8

prosecutorial retort, "Excuse me, does he have a standing objection to every question I ask?" (Dkt. #3-1, p. 29). The prosecutor withdrew the question when defense counsel committed not to "probe" that area, but his tone was somewhat hostile, he disparaged the defense counsel's objection and often interrupted his argument. Defense on appeal claims this bullying tactic was unfair in getting an answer to a hypothetical question before the objection was ruled on and apparently limited his cross examination. This objection was not made at trial. The appeal also complained about the prosecutor offering to have "[o]ur detective help get defense's first witness," allegedly trying to demonstrate the prosecutor's "control over the trial, and perhaps even intimidate the defense witnesses." Petitioner challenges the prosecutor asking Glemie Beasley, a spiritual advisor to Petitioner and the victim, about her belief in God, the Ten Commandments and the fact that moral, spiritual people do not harm others. Petitioner asserts religion was not to be inquired into of a witness. Glemie Beasley testified that Petitioner was not in her opinion a violent man. The religion questions were not asked to attack Ms. Beasley's credibility for being a believer or not, but as a prelude to a question of whether she was aware Petitioner stole from the victim to buy cocaine, which was a challenge to how much she really knew about the Petitioner.

When the prosecutor objected to the victim's August 2000 hospitalization for drug treatment as collateral, and when defense counsel began to respond, the prosecutor asserted "I don't want another speech," apparently to ridicule the defense counsel. Then outside the presence of the jury the argument increased in intensity with the prosecutor interrupting once saying, "No I don't want to hear from him".

Many of the matters the Michigan Court of Appeals reviewed for plain error because there was no objection at trial. Petitioner's claims regarding matters not objected to are procedurally barred under state law, which is why the Michigan Court of Appeals noted they were "not preserved by a timely objection" and why it applied plain error as the standard of review. On the bullying prosecutor tactics the court found they fell short of personal attacks on

9

defense counsel, and noted that the Prosecutor did not attempt to get an answer before the trial judge ruled on the objection. *People v. McLaughlin*, 258 Mich. App. at 647. Concerning the "does he have a standing objection to every question I ask?" interruption of defense counsel's objection on the injury to a virgin, the court noted "[t]he prosecutor's momentary expression of impatience was too fleeting and unremarkable to constitute an obvious error that denied defendant a fair trial. Furthermore, the trial court could have cured any prejudice with a curative instruction." *Id.* On the "I don't want another speech" disparagement, it concluded, "This brief expression of mild sarcasm, however, was not so prejudicial that it could have affected defendant's substantial rights." *Id.* at 648. It noted many of the prosecutorial misconducts occurred outside the presence of the jury, and could not have prejudiced defendant. *Id.*

Petitioner also complained in his appeal about the prosecutor asking about his lack of income and resources and argued in his closing that the victim was not bringing this rape allegation to make money by suing Petitioner. He also objected to arguments that the defense argument would suggest that the victim committed perjury under oath. Petitioner argues that questions concerning low income or resources are not admissible on witness credibility or motive. Again there were no objections at trial. These alleged prosecutorial failings were not deemed plain error by the Michigan Court of Appeals because they did not affect the Petitioner's substantial rights and cause prejudice, i.e. an error that must have affected the outcome of the lower court proceedings.[2]

---

[2] The Michigan Court of Appeals noted Michigan's common standards for plain error:

> To avoid forfeiture of review of this issue under the plain error rule, the defendant must demonstrate that: (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected the defendant's substantial rights. *Id.,* citing *People v. Carines,* 460 Mich. 750, 763-764, 597 N.W.2d 130 (1999).

*People v. McLaughlin*, 258 Mich. App. at 645.

10

Regarding the spirituality issue,  the Michigan Court of Appeals noted:

> Aside from the questions regarding Beasley's opinions on spirituality, the prosecutor's cross-examination was permissible. The prosecutor sought to undermine Beasley's opinion of defendant's character by showing that Beasley, who had only known defendant for a year, knew nothing about defendant's drug use. In the broader context of the entire trial, the questions regarding Beasley's religious opinions were a minor incident in the examination of a minor witness, and were too insignificant to deprive defendant of a fair trial.

*Id.* at 664.

On the complaint about the prosecutor's offer to have the state's detective bring in the defense's first witness, the Court of Appeals doubted the jury would infer from the statement that the prosecutor controlled who could testify and any error could have been corrected by an instruction had there been an objection.  *Id.* at 647, note 5.  It found no plain error.

Because of the procedural default in failing to object, federal review of these claims are also barred unless Petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Ylst v. Nunnemaker*, 501 U.S. 797 (1991). Petitioner makes no claim of cause for these procedural defaults.  Petitioner's failure to establish cause thus bars federal habeas review of his claim without consideration of the issue of prejudice. *Coleman v. Thompson,* 501 U.S. 722 (1991).  Nor does Petitioner attempt to show that this Court's refusal to hear his prosecutorial misconduct claims will result in a fundamental miscarriage of justice under *Murray v. Carrier,* 477 U.S. 478 (1986), which requires a showing that a constitutional violation has probably resulted in the conviction of one who is actually innocent.  *Schlup v. Delo*, 513 U.S. 298 (1995).  That exception to procedural default requires a showing of actual innocence "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error. *Id*. at 316.  There are no arguments or facts in this case supporting this high standard.

On this record it cannot be said that the Michigan Court of Appeals made an

11

unreasonable application of clearly established federal law on the challenges to prosecutorial misconduct.

**B**.  **The Trial Court Reversibly Erred in Denying the Defense Motion to Dismiss on Speedy Trial Grounds.**

Petitioner claims that the prosecutor did not make a good faith effort to bring him to trial within the 180 days he asserts is required by MCL 780.131.  Petitioner's trial on March 2, 2001, was 185 days after his arrest.  He claims this was in violation of Michigan law as well as his constitutional right to a speedy trial.  The Michigan Court of Appeals determined that the statute on 180 days did not apply to Petitioner because he was not serving another sentence.  In *People v. Chavies*, 234 Mich. App. 274, 280; 593 N.W.2d 655 (1999), it was held that the purpose of the statutory 180-day rule was to "'dispose of untried charges against prison inmates so that sentences may run concurrently.'"  *Id*. (quoting *People v. Bell*, 209 Mich. App. 273, 279; 530 N.W.2d 167 (1995)); *see also* MCL 780.131(1); MCR 6.004(D).  The Court of Appeals found that the statute applies only to those defendants who, at the time of trial, are currently in state penal institutions and not to individuals awaiting trial in a county jail.  *People v. McLaughlin*, 258 Mich. App. at 643-44.  It also concluded that the 185 day trial delay did not violate Petitioner's right to a speedy trial in violation the United States or Michigan Constitutions even though Petitioner was in jail during this period.

> However, the federal and Michigan Constitutions, and Michigan statutory law, guarantee non-prison inmates a speedy trial without reference to a fixed number of days. US Const, Am VI; Const 1963, art 1, § 20; MCL 768.1; *People v Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999). When a defendant claims a violation of this right, the trial court must consider four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right; and (4) any prejudice to the defendant. *Id*. at 112. When the delay is less than eighteen months, the defendant must prove prejudice. *Id*. Here, in making this argument, defendant has relied solely on the 180-day rule in MCL 780.131, and never attempted to demonstrate prejudice, which is essential here, where the delay was less than eighteen months. *Cain, supra*. Thus, there was no violation of defendant's constitutional or statutory righ

*Id.* at 644.

This Court will not review the state law question under MCL 780.131. It is not cognizable in federal habeas review because jurisdiction is limited to habeas relief for a petitioner "in custody in violation of the constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(3); 28 U.S.C. § 2254(a). *See also Smith v. Phillips*, 455 U.S. 209, 221 (1982) (habeas relief may not be based upon a perceived error of state law.); *Rose v. Hodges*, 423 U.S. 19, 21 (1975); *Estelle v. McGuire*, 502 U.S. 62 (1991).

The Sixth Amendment to the United States Constitution, incorporated against states in the Fourteenth Amendment due process clause, guarantees that "in all criminal prosecutions, the accused shall enjoy the right to a speedy … trial". In *Barker v. Wingo*, 407 U.S. 514, 530 (1972) the United States Supreme Court described a court's duty in analyzing a petitioner's right to a speedy trial as a balancing test and provided four factors that can be used to determine whether a petitioner's conviction was obtained in violation of the Sixth Amendment right to a speedy trial: length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Id*.

Actual prejudice is to be assessed in light of the speedy trial protections: (i.) to prevent oppressive pretrial incarceration; (ii.) to minimize anxiety and concern of the accused; and (iii.) to limit the possibility that the defense will be impaired. A threshold inquiry in speedy trial claims is whether the delay at issue is "presumptively prejudicial," meaning whether the delay is long enough to even trigger consideration of the *Barker* factors. Affirmative proof of particularized prejudice is not essential to every speedy trial claim. *Doggett v. United States*, 505 U.S. 647, 655 (1992). Prejudice can be presumed as the length of delay becomes excessively unusual. *Id*. at 655-56. The Sixth Circuit has determined that, "a six-and-one-half month delay in trying defendants accused of attempted possession of cocaine with intent to distribute…was not presumptively prejudicial." *United States v. White,* 985 F.2d 271 at 275 (6th Cir. 1993). *Norris v. Schotten*, 146 F 3d 314, 328 (6th Cir 1998) found eight months not to be presumptively prejudicial. In *United States v. Cope*, 312 F.3d 757, 778 (6th Cir. 2002), eight

13

months and three weeks was *not* presumed prejudicial.

Petitioner's trial occurred approximately six months after his arrest. This delay was not long enough to cause this Court to consider the *Barker* factors and presume prejudice. Nor does it appear the Court of Appeals was wrong in finding Petitioner demonstrated no prejudice. Petitioner is not entitled to relief on his speedy trial claim because it cannot be said that the Michigan Court of Appeals made an unreasonable application of clearly established federal law on this challenge.

### C.  The Trial Court Reversibly Erred in Admitting Certain Inadmissible Evidence and in Keeping out Certain Admissible Evidence.

Petitioner's state court arguments on evidentiary issues relied entirely on state law. To the extent Petitioner's evidentiary claims in this proceeding raised federal issues, those issues would be unexhausted because of his failure to present them as federal claims to the state courts in his appeal. Thus, this and the entire petition could be dismissed as a mixed petition under *Rose v. Lundy*, *supra.* Yet it is in the interests of the parties and the courts for the merits of a petition to be addressed under 28 U.S.C.A. §2254(B)(2) because Plaintiff's evidentiary arguments do not even raise a colorable federal claim.

The Michigan Court of Appeals found "that the evidentiary errors raised by defendant are either nonexistent, or, as to those that did occur, that they were harmless." *People v. McLaughlin*, 258 Mich. App. at 650.

An issue concerning the admissibility of evidence or error in a state criminal proceeding does not rise to a level of a federal constitutional magnitude unless it can be viewed as so egregious that the petitioner was denied a fundamentally fair trial.  *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004), *cert. denied*, 125 S. Ct. 126 (2004); *Frazier v. Huffman*, 343 F.3d 780, 789 (6th Cir. 2003), *as amended on reh'g*, 348 F.3d 174 (2003), *cert. denied*, 541 U.S. 1095 (2004).

### 1.  The SANE Records

14

Defense counsel did object to the asserted hearsay statements the victim had made to Shelley Geiman, a registered nurse who worked for the Sexual Assault Nurse Examiners (SANE) who attended the victim at the hospital.  In that statement the victim claimed that she was forced to have sex.  Petitioner also objects to the observations of the nurse in the SANE report.  The Michigan Court of Appeals found the former statement properly admissible under Mich. R. Evid. 803(4) as a statement made in connection with medical treatment and the latter statement properly admitted under Mich. R. Evid. 803(4) as a business record.  *Id.* at 650-52.  Even if there was hearsay within hearsay and application of Rule 803(4) only cured one of the two hearsay problems, on the second issue this error would not rise to a federal constitutional level because it did not deny Petitioner a fundamentally fair trial.

In addition to Geiman's written report in the SANE records that Petitioner challenges as hearsay, the court noted that Geiman was a witness and testified regarding the extent of the victim's injuries:

> Geiman found a raised, reddened, one-centimeter patch on the victim's head where a tuft of hair had apparently been pulled out. The victim had bite marks on her breasts, bruises and tender spots on her legs, arms, and shoulders, and an abrasion on her neck. Geiman found no vaginal injuries, but stated that this was typical for a woman who has had two children.

*Id.* at 645, note 3.

Thus, her prior consistent observations as well as the victim's prior statement that Petitioner assaulted her, even if inadmissible as hearsay, were repeated in live testimony and subject to cross examination and as such admission of these SANE record accounts would clearly be harmless error.

On these evidentiary rulings, the Michigan Court of Appeals did not unreasonably apply clearly established federal law because admission of the SANE records did not deprive Petitioner of a fundamentally fair trial.

### 2.  *Prior Sexual Relations of Petitioner and the Victim*

15

Citing *Michigan v. Lucas*, 500 U.S. 145 (1991), Petitioner claims that evidence of the victim's prior sexual relations with him was denied admission, and this was so unfairly prejudicial that it denied his due process right to a fundamentally fair trial. The Michigan Court of Appeals rejected this claim:

> Defendant also argues that the trial court erred in excluding testimony of prior consensual sexual relations between the victim and himself. Defendant argues that he was not required to give prior notice that he intended to introduce this evidence.
>
> MCL 750.520j(1)(a) provides that "[e]vidence of specific instances of the victim's sexual conduct [with the defendant] . . . shall not be admitted unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value." MCL 750.520j(2), however, contains a specific notice provision applicable to a defendant who wishes to admit evidence of the kind described under subsection (1):
>
>> If the defendant proposes to offer evidence described in subsection (1)(a) or (b), the defendant within 10 days after the arraignment on the information shall file a written motion and offer of proof. The court may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1). If new information is discovered during the course of the trial that may make the evidence described in subsection (1)(a) or (b) admissible, the judge may order an in camera hearing to determine whether the proposed evidence is admissible under subsection (1).
>
> Defendant argues that the notice requirement of MCL 750.520j(2) should not have precluded him from cross-examining the victim about prior consensual relations with himself. Defendant relies on *Michigan v Lucas*, 500 US 145; 111 S Ct 1743; 114 L Ed 2d 205 (1991), and related decisions of this Court.
>
> In *Lucas*, the United States Supreme Court concluded that the notice requirement of MCL 750.520j(2) enabled a prosecutor to interview persons and otherwise investigate whether a prior relationship really existed. When a complainant conceded a prior sexual relationship, the procedure allowed a trial court to determine, before trial, whether evidence of the relationship was material to a fact at issue in the case or whether the inflammatory or prejudicial nature of the evidence outweighed its probative value. Id. The Court then determined that the notice requirements and preclusion sanctions within MCL 750.520j(2) were permissible because they "serve legitimate state interests in protecting against surprise, harassment, and undue delay." *Id.* at 152-153. The Court declined to consider whether preclusion was justified in *Lucas*, but remanded to this Court to address whether preclusion violated the defendant's Sixth Amendment rights. *Id.* at 153.

16

On remand, we determined that when the defendant seeks to submit evidence of prior consensual relations between himself and the complainant pursuant to MCL 750.520j(1)(b), failure to give notice does not automatically preclude admission of the evidence. In this situation, the trial court must exercise its discretion, on a case-by-case basis, to determine whether the evidence should be admitted or excluded. In making this decision, the trial court should consider that the purpose of the rape-shield statute is to protect rape victims from surprise, harassment, unnecessary invasions of privacy, and undue delay. Protracted delay in raising the evidence, especially by waiting until the start of trial, suggests wilful misconduct to create a tactical advantage, and weighs in favor of exclusion. *People v Lucas (On Remand)*, 193 Mich App 298, 301-302; 484 NW2d 685 (1992); see also *People v Lucas (After Remand)*, 201 Mich App 717, 719; 507 NW2d 5 (1993).

Here, the trial court erred by excluding the evidence solely on the basis of defendant's failure to give notice, without exercising its discretion in light of the particular circumstances of the case. However, defendant's offer of proof provides enough information on the record for us to determine that evidence of sexual relations before the victim's injury and surgery clearly would not serve any legitimate purpose. The evidence already established that the victim had been sexually active with defendant before her injury and before she terminated their relationship. The jury knew that defendant and the victim lived together in a romantic relationship, and the prosecutor acknowledged in his closing argument that August 30, 2000, was not the first time the victim and defendant had sex. Evidence that their consensual sex included anal intercourse also would not serve any proper purpose. This salacious detail has only the most tenuous connection to the question of the victim's consent on August 30, but has great potential for embarrassment, harassment, and unnecessary intrusion into privacy. *Lucas (On Remand)*, supra at 302-303.

On the other hand, evidence that the victim consented to sex with defendant after her injury and surgery would serve some legitimate purpose. The victim's credibility was enhanced by evidence that she was in severe discomfort after her surgery and by her testimony that she ended her relationship with defendant in May. The victim specifically testified that she did not have consensual sexual relations with anyone after surgery because she felt too sore. These circumstances made it less likely that she would engage in consensual sex with defendant, as the prosecutor argued in closing. Evidence that the victim was having consensual sex with defendant despite these circumstances would, therefore, have bolstered defendant's defense.

Nonetheless, the exclusion of the evidence was harmless error. Defendant testified that he and the victim remained a couple throughout the summer of 2000. Defendant was also able to slip in testimony about having sexual relations with the victim during this time. This testimony strongly suggested that the victim remained sexually enthusiastic despite her injury. Defendant further testified that the victim helped him move his luggage when he moved into the motel with her, despite her back pain, and added, "victim did a lot of things her doctor ordered her not to do." Although this was not the sort of explicit evidence defendant hoped to get before the jury, it was sufficient to alert the jury that defendant maintained that he and the victim remained sexually involved despite her back injury and their troubled

17

relationship.

Further, defendant's interest in producing the evidence must be balanced against the prosecution's interest in avoiding surprise. Defendant's protracted delay in offering the evidence suggests "wilful misconduct designed to create a tactical advantage" that weighs in favor of exclusion. *Lucas (On Remand), supra* at 302-303. In light of these balanced interests, defendant was not unduly prejudiced when he was not permitted to introduce explicit evidence, and had to rely on the aforementioned oblique references. Under these circumstances, we conclude that the trial court's failure to exercise its discretion was harmless error, and the exclusion of the evidence, if erroneous, was also harmless.

*People v. McLaughlin,* 258 Mich. App. 652-657 (footnote omitted).

As the court notes, the jury was aware of prior consensual sexual relations before the victim's May 2000 spine fracture.  As noted above, Petitioner indicated in his testimony he initiated sexual activities "as he normally would," noted the normal routine of showering after having sex and noting the victim often acted crazy after they finished making love.  It was solely in the May to August 30 time period that the Petitioner was excluded from countering the victim's denial of having sex with anyone after her May injury.  While being allowed to cross-examine the victim on this likely would have elicited no change in her denials, the question is whether Petitioner should have been allowed to testify to having consensual sex with the victim during this period.

Here the Michigan Court of Appeals determined a remand was not necessary and it could decide the issue because "defendant's offer of proof provides enough information on the record for us to determine" the matter.  It carefully analyzed the *Lucas* case and its competing values.  It noted that the issue was not whether these two had sex prior to May 2000, but rather after that when "evidence that the victim was having consensual sex with defendant despite these circumstances would, therefore, have bolstered defendant's defense."  The Michigan Court then noted the various "oblique references" in which the Petitioner was able to suggest continued sexual activity with her.  The Court found this "was sufficient to alert the jury that defendant maintained that he and the victim remained sexually involved despite her back injury and their

18

troubled relationship."  It concluded that the trial court's failure to hold a hearing in order to exercise its discretion was harmless error, and the exclusion of the evidence, if erroneous, was also harmless.  *Id.* at 656-67.

As stated in the Petitioner's appeal, in the remand in *Lucas* the Michigan Court of Appeals noted that "protracted delay in raising the evidence, especially by waiting until the start of trial, suggests wilful misconduct to create a tactical advantage, and weighs in favor of exclusion."  That was a factor used in the *Lucas* remand decision to uphold the conviction.  In the earlier portions of the *Lucas* case history, it was the Michigan Court of Appeals that had found Michigan's Rape Shield Law's *per se* exclusion rule unconstitutional.  Yet the United States Supreme Court rejected the state court's central premise that notice to the government to investigate a defendant's claim of prior sexual activity was impossible for such private personal involvements.  Rather the Supreme Court noted that

> legitimate state interests support the notice-and-hearing requirement. The Michigan statute represents a valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy. The statute also protects against surprise to the prosecution. Contrary to the Michigan Court of Appeals' statement that a notice requirement " 'serve[s] no useful purpose' " when the victim is alleged to have had a prior sexual  relationship with the defendant [] the notice requirement permits a prosecutor to interview persons who know the parties and otherwise investigate whether such a prior relationship actually  existed.  When  a  prior  sexual  relationship  is  conceded,  the notice-and-hearing procedure allows a court to determine in advance of trial whether evidence of the relationship "is material to a fact at issue in the case" and whether "its inflammatory or prejudicial nature . . . outweigh[s] its probative value."

*Michigan v. Lucas*, 500 U.S. at 149-150, (citations omitted).

The *People v. McLaughlin* opinion acknowledges this fact that notice can provide the prosecutor time to gather evidence to counter a claim of prior sexual activity during critical periods.  Obviously, that opportunity is only possible where the victim denies prior consensual sexual activity in the critical period, and the victim did here between May and the end of August 2000.  Given the evidence that the victim after May stopped living with Petitioner, was hospitalized for her fracture, and again later for drug treatment in August, the fact that she lived

19

with her daughter in a very small motel area, this is precisely the type of case where prior notice might have provided the prosecutor much opportunity to gather substantial counter evidence. While there is no basis to challenge the Court of Appeal's "harmless error" finding, it is significant that it might have upheld the trial court's ruling on this alternate legitimate justification for precluding such evidence where the statutory notice was ignored and the Petitioner may have been seeking a "tactical advantage" of catching the prosecutor unprepared to call any witnesses other than the victim to counter Petitioner's claims.

On this record it cannot be said that the Michigan Court of Appeals made an unreasonable application of the clearly established federal law set out in *Lucas* on the challenges to the limitation of Petitioner's presenting more than oblique evidence of prior consensual sexual relations with the victim between May and August 30, 2000.

### 3.   Other Evidentiary Issues

Petitioner challenges the fact that Nurse Geiman was allowed to testify as an expert, over his objection, because the prosecutor failed to designate her as an expert during pretrial discovery as required by MCR 6.201(A).  While questioning whether MCR 6.201(A) applied because

> MRE 701 permits lay witnesses to testify about opinions and inferences that are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Geiman's testimony related to her observations and findings during the examination of the victim, and was almost entirely within these limitations. MRE 702 allows qualified experts to testify about "scientific, technical, or other specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." The only statements from Geiman's testimony that could be construed as "specialized knowledge" was her testimony that the victim's physical state (bruises, torn hair) and demeanor (anxious, upset) were consistent with a recent rape and with the history that the victim gave. These opinions do not involve highly specialized knowledge, and are largely based on common sense. See *Leavesly v. Detroit,* 96 Mich.App. 92, 94, 292 N.W.2d 491 (1980), mod 409 Mich. 926, 297 N.W.2d 387 (1980).  Geiman's testimony that vaginal injuries are unusual in rape, especially in a mature woman who has given birth, was the only testimony that might be construed as specialized information not commonly known. *Id.* However, any error is harmless because it is highly improbable that this brief testimony would have

20

been the deciding factor in how the jury resolved the credibility contest. Defendant never argued that the absence of vaginal injury undermined the victim's credibility. Additionally, defendant has not explained how he would have been better prepared to respond to this evidence simply by knowing before trial that Geiman would be offered as an expert witness. After all, Geiman's testimony would not have been a surprise because defendant knew that she was going to testify, and defendant could have reasonably predicted that she would testify about her findings during the victim's examinations. Therefore, we conclude that defendant is not entitled to a new trial on the basis of the prosecutor's failure to designate Geiman as an expert witness

*People v. McLaughlin,* 258 Mich. App. at 657-658.

Over objection, Officer John Marginean, one of the officers who responded to the victim's call to the police, was allowed to testify to what the victim told him at the scene of the crime based on a trial court ruling that this was an excited utterance exception to the hearsay rule under MRE 803(2). The Michigan Court of Appeals found a proper foundation was laid by Officer Marginean, who arrived within a minute or two of the victim's call, that the victim appeared extremely upset or "frantic," and was having trouble breathing and speaking. This was confirmed by the victim's daughter, who noted that the victim was extremely upset and shaking at the time she called the police.

A witness Glemie Beasley, a friend and religious counselor of Petitioner expressed an opinion that Petitioner was not a violent man. Because no objection was made the Michigan Court of Appeals found no plain error or cause for reversal based on the questioning of that witness on "spirituality" in the context of a challenge to the information base or real knowledge about Petitioner – that the witness was unaware Petitioner stole from the victim and used drugs. *Id.* at 662-63.[3]

It also found the questioning of Petitioner on his poverty was not impermissibly admitted to show motive to commit the crime, but rather it was used to show that the victim did not bring this criminal accusation against Petitioner in order to gain a financial benefit by suing the

---

[3] The Glemie Beasley examination was also challenged under his prosecutorial misconduct claim discussed above.

21

Petitioner civilly later.  *Id* at 666.

As noted above, the Prosecutor asked Nurse Geiman about the severity of injury to the hymeneal area if the victim were a virgin.  Defense counsel objected and while the encounter raised issues of prosecutorial misconduct, the line of questioning was abandoned.  The Court of Appeals found no problem with this question because it was to provide context to the fact that the victim, who admittedly had two children, might not have had vaginal damage if raped.  *Id*. at 659, note 9.

None of these evidentiary rulings denied Petitioner of a fundamentally fair trial and none involve an unreasonable application of clearly established federal law.


### D.  The Trial Court Reversibly Erred in Overruling the Defense Objection to the Intoxication-is-Not-A-Defense Jury Instruction Requested by the Prosecutor.

Petitioner argues that the state court erred when it instructed the jury that voluntary intoxication is not a defense to the crime.  This instruction provides, "There has been some evidence that the defendant was voluntarily intoxicated with alcohol or drugs when the alleged crime was committed.  Voluntary intoxication is not a defense to [criminal sexual conduct].  So it does not excuse the defendant if [he] committed this crime."

In order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair.  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Hardaway v. Withrow*,305 F.3d 558, 565 (6th Cir. 2002); *Buell v. Mitchell*, 274 F.3d 337, 355 (6th Cir. 2001).  28 U.S.C. §2254(a) allows habeas relief only for a violation of the "Constitution or laws or treaties of the United States."  Errors in the application of state law are not to be questioned on habeas review and further, federal habeas courts have no

authority to interfere in matters of state law. *Estelle v. McGuire*, *supra* (federal habeas corpus relief does not lie for errors of state law); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) (federal court may not issue the writ on the basis of a perceived error of state law).

On the jury instruction, The Michigan Court of Appeals determined:

> While the evidence did not directly establish that defendant was intoxicated at the time of the rape, the jury could have inferred this from the evidence that he had an ongoing drug problem and that he spent all his money on drugs in the hours preceding the crime. Consequently, the prosecution had legitimate cause to be concerned that the jury might believe that defendant was intoxicated at the time of the rape and erroneously conclude that he was not legally accountable for his actions. The jury instruction was, therefore, relevant to the evidence, and the trial court did not err in giving it.

*People v. McLaughlin*, 258 Mich.App. at 669.

This ruling, which seems reasonable, does not render the Petitioner's entire trial fundamentally unfair and violates no federal law.

### E. The Trial Court Violated the United States. and Michigan Constitutions in Sentencing the Defendant to Concurrent Prison Terms of 108 Months (9 Years) to 300 Months (25 Years) on the Three CSC1 Convictions

Petitioner notes that the probation department's original sentencing guideline called for C-V level with a minimum sentence ranging from 126-210 months, but at sentencing it was corrected to a C-IV level with a minimum sentence range of 108-180 months (April 11, 2001, Sentencing Hearing Tr. at p. 8.). On the three CSC1 convictions, Petitioner was sentenced to concurrent prison terms of 108 months (9 years) to 300 months (25 years) with credit for 225 days served. He argues that this violated the Eight Amendment Cruel and Unusual Punishment clause of the U.S. Constitution. He asserts his single prior misdemeanor marijuana conviction and other sentencing factors, including his church involvement and employment history, should demonstrate his sentence was improper.

Under the Michigan Guidelines, M.C.L.A. 769.34 (7) provides:

23

If the trial court imposes on a defendant a minimum sentence that is longer or more severe than the appropriate sentence range, as part of the court's advice of the defendant's rights concerning appeal, the court shall advise the defendant orally and in writing that he or she may appeal the sentence as provided by law on grounds that it is longer or more severe than the appropriate sentence range.

M.C.L.A. 769.34( 10) adds:

If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence. A party shall not raise on appeal an issue challenging the scoring of the sentencing guidelines or challenging the accuracy of information relied upon in determining a sentence that is within the appropriate guidelines sentence range unless the party has raised the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals.

The Michigan Court of Appeals found that Petitioner did not raised the proportionality issue at sentencing:

Here, although defendant objected to the trial court's scoring of offense variable (OV) 11, he did not raise the proportionality issue he now raises. Accordingly, this issue is reviewed for plain error. When the minimum sentence is within the range provided by the statutory sentencing guidelines,[FN13] this Court must affirm unless the trial court erred in scoring the guidelines or relied on inaccurate information. MCL 769.34(10); *People v. Leversee,* 243 Mich.App. 337, 348, 622 N.W.2d 325 (2000). Except as otherwise provided in the statute, MCL 769.34 requires that the trial court impose a sentence withinthe guidelines range, but permits departures from the guidelines for substantial and compelling reasons. MCL 769.34(2)-(3)

* * *

As defendant recognizes, his minimum sentence of nine years was at the low end of the sentencing guidelines range for his offense. MCL 777.62. Accordingly, defendant's argument is without merit because of the statutory limitation on appellate review of sentences. MCL 769.34(10). *People v. Babcock,* 469 Mich. 247, 666 N.W.2d 231 (2003). Consequently, defendant's proportionality claim is outside the limited scope of review provided for by the statute.[FN14]

_____

FN.13. [Omitted.]

FN14. Contrary to defendant's argument, the tr.ial court was not obligated to advise defendant of his rights under MCL 769.34(7). As discussed above, the trial court did not impose on defendant a minimum sentence in excess of the guidelines range. Accordingly, MCL 769.34(7) is inapplicable, and there was no basis for the trial court to advise defendant of these rights.

*People v. McLaughlin,* 258 Mich. App. at 670-711

Petitioner cites *Coker v. Georgia*, 433 U.S. 584 (1977), holding that the death penalty is disproportionate for rape.  Yet he cites no cases holding that a 9-25 years sentence (with this minimum being at the low end of the sentencing guidelines range for the offense) for a rape at knifepoint, with three penetrations of a woman recovering from severe spinal injuries is a violation of the Eight Amendment.

While the Michigan Court of Appeals appears to have avoided the proportionality issue on jurisdictional grounds, this sentence of 9-25 years for the offense charged does not violate the Eighth Amendment to the U.S. Constitution.

**F.  The Sentencing Court Reversibly Erred in Failing at Sentencing to Provide the Advice-of-rights Required by MCL 769.34 (7).**

**and**

**G.  The Trial Court Reversibly Erred in Scoring 50 Points On Nov-11.**

Petitioner's final two claims regarding his sentencing were raised as state issues in the Michigan Court of Appeals and are thus unexhausted because of his failure to present them as a federal claim in the state courts.  Yet, because they do not involve violations of federal rights his federal habeas petition may be reviewed and denied under 28 U.S.C. §2254(b)(2).

Both claims are that the trial court erroneously applied the Michigan Sentencing Guidelines and both rest entirely on state law.  As noted above, federal courts will not grant habeas corpus review of violations of only state law.  *See  Jones v. Estelle*, 622 F.2d 124 (5th Cir. 1980) (on a state's failure to follow its own sentencing procedures.); *Bloyer v Peters*, 5 F.3d 1093 (7th Cir. 1993).  Petitioner's claim that he was not given the advice of rights required by state law was rejected by the Michigan Court of Appeals, which stated that the statute is inapplicable to Petitioner's situation.

On the first issue, the Michigan Court of Appeals, in footnote 14 quoted above, holds that the advise of rights to appeal provided for under MCL 769.34(7) is inapplicable because the trial

25

court did not impose a minimum sentence in excess of the guidelines range as MCL 769.34(7) requires to trigger its notice provision.  There is no federal constitutional violation on this issue.

Regarding the challenged calculation under the Michigan sentencing guideline, the Court of Appeals carefully analyzed the statute and case law related to it and determined that the fifty points were properly assigned for two or more criminal sexual penetrations, and that penetrations for which there were separate convictions can be counted in making this calculation under M.C.L. 777.41(1)(a).  *People v. McLaughlin*, 258 Mich.App. at 673-678 .  This reasoning makes sense in order to provide an increased sentence for a rapist who commits multiple penetrations, even when the other penetrations are separately charged, because commonly, as was the case here, the sentences served on the multiple counts are served concurrently.

Petitioner provides no case law demonstrating that this sentencing guideline determination violates federal law, which clearly it does not.


**V.   CONCLUSION AND RECOMMENDATION**

On this record it cannot be said (1) that the Michigan Court of Appeals made an unreasonable application of clearly established federal law on any of Petitioner' challenges where it addressed the federal question, nor (2) that there were any federal constitutional violations on those issues the Michigan Court of Appeals did not address under federal law.

Accordingly, for the above stated reasons, IT IS RECOMMENDED that Petitioner's habeas corpus request be DENIED.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Filing of objections, which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: October 4, 2006                                    s/Steven D. Pepe_____
Ann Arbor, Michigan                                       United States Magistrate Judge

Certificate of Service

        I hereby certify that a copy of this Report and Recommendation was served upon all parties of record of record by electronic means and or U. S. Mail on October 4,  2006.

                                                          s/Deadrea Eldridge___
                                                          Courtroom Deputy Clerk

27